**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 10, 2019**

# In the Court of Appeals of Georgia

A19A0912.  JOHN  C.  WILSON  COMPANY,  INC.  et al.  v.  DO-034
      REGIONS BANK.

DOYLE, Presiding Judge.

In this case, defendants John C. Wilson Company, Inc. ("JCW"), and Frank Alton Black, Sr., appeal from the grant of summary judgment to plaintiff Regions Bank ("the Bank") in the Bank's suit on a note executed by JCW and guaranteed by Black. The defendants contend that the trial court erred because (1) service was improper as to JCW; (2) there was a dispute of fact as to the defendants' demand for an accounting; (3) the Bank violated Black's right to financial privacy; and (4) the superior court should have required the Bank to convey its security interest to the defendants. For the reasons that follow, we affirm in part, vacate in part, and remand the case.

This court reviews a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant.[1] So viewed, the record shows that in May 2009, JCW executed a note in favor of Regions Bank for the principal amount of $258,243.74, and Black executed an unconditional guaranty on the debt. According to the terms of the note, JCW was required to make 34 monthly payments of $2,076.96 with a final payment of the outstanding balance due in April 2012. The interest rate was a variable rate equivalent to prime plus two percent, and the note provided for a late fee of five percent of the unpaid portion of the regular payment. By June 2011, JCW stopped making payments, and it did not pay the balance on the maturity date.

In September 2015, unable to collect on the note and guaranty, the Bank sued JCW and Black, asserting claims for breach of contract with respect to the note and guaranty. Black was served personally and as the corporate agent of JCW. Black and JCW filed answers, challenging service and, inter alia, asserting a counterclaim for an accounting. Discovery ensued, and the Bank moved for summary judgment, attaching an affidavit from Akinwande Childrey, a Bank vice president with

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

knowledge of the business records reflecting the status of the loan, and attaching records reflecting the loan payments and outstanding balance. The defendants opposed the motion, relying in part on an affidavit by Black averring that he was no longer a shareholder in JCW and denying that he had received an accounting. Following a hearing,[2] the trial court granted the Bank's summary judgment motion. JCW and Black now appeal.

1. The defendants first argue that summary judgment was not appropriate because JCW was not served properly through its corporate agent. As noted above, the record shows that the Bank filed the complaint in September 2015 and served Black as the registered agent of JCW. JCW relies on affidavits by Horace Weathersby and Black averring that Black sold his interest in JCW to Weathersby in 2010, JCW had been administratively dissolved by 2012, and in 2013, Weathersby purported to send a form to the Secretary of State designating himself as the registered agent.

Nevertheless, the Bank produced certified copies of corporate records from the Secretary of State showing that JCW was administratively dissolved in 2011 and only later reinstated in April 2016 (with Weathersby as the registered agent) pursuant to

---

[2] One hearing transcript appears in the record, but it shows that the parties only briefly outlined the issues and elected to rely on supplemental briefs.

3

an application filed by Weathersby in October 2015, one month after the lawsuit was filed. Thus, at the time Black was served, the Secretary of State records indicated that Black was still the registered agent because JCW had not yet been reinstated through Weathersby's application, and "[t]he administrative dissolution of a corporation [did] not terminate the authority of its registered agent" at that time, i.e., Black.[3] In similar contexts, this Court has held that self-serving and conclusory affidavits such as Weathersby's, in the absence of substantiating facts, are insufficient to create a factual issue when demonstrably opposed by business record evidence.[4] Accordingly, the record does not reveal a factual issue with respect to service, and the trial court correctly deemed service proper on JCW through the service on Black.

2. The defendants also claim error in (a) the lack of a full accounting for the debt, (b) the interest calculation, (c) the late fee awards, and (d) the attorney fee award.

---

[3] OCGA § 14-2-1421 (d). See also OCGA § 14-2-1421 (c) ("A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs. . . .").

[4] See, e.g., *Jones v. Bank of America Mtg.*, 254 Ga. App. 217, 219 (1) (561 SE2d 867) (2002); *Foster v. Ramsey*, 245 Ga. App. 118, 119 (1) (536 SE2d 550) (2000) (physical precedent only); *Miller v. Calhoun/Johnson Co.*, 230 Ga. App. 648, 650 (3) (b) (497 SE2d 397) (1998).

(a) *Evidence of accounting*. With respect to the accounting provided by the Bank, the record contains authenticated documents showing the debt owed, the payments made by defendants, the interest accrued, and the late fees charged. Other than making bare assertions that the account statement could contain errors, the defendants offer no evidence of such error. "Although [the defendants] may well have had an opinion that [the Bank] had miscalculated the outstanding balance, [they] failed to offer any evidence to support [t]his belief. Conclusory statements in affidavits unsupported by factual evidence are insufficient to avert summary judgment."[5] Accordingly, this argument does not require reversal.

(b) *Interest award*. The order granting summary judgment makes the following award: a principal amount of $237,975.72, accrued interest through July 20, 2017, in the amount of $59,816.07, and continuing interest "at the rate of 5.25 [percent] per year (or $53.65 per day)." The defendants point out, and the Bank concedes, that annual interest of 5.25 percent on a principal amount of $237,975.72 does not equal $53.65 per day. The Bank asserts that this was the result of a typographical error in the affidavit of its vice president, and the proper per diem amount when calculated

---

[5] *Miller*, 230 Ga. App. at 650 (3) (b).

according to the note's terms[6] is $34.90. In light of the mathematical error in the affidavit on this point, we vacate this portion of the award and remand for entry of an award reflecting a per diem interest amount consistent with the undisputed annual interest rate. The evidence is not in conflict with respect to the interest rate such that summary judgment was otherwise inappropriate.

(c) *Late fees*. The defendants also challenge the summary judgment award with respect to the late fee calculation. This requires a construction of the note, which we review de novo.[7]

JCW's payment obligation under the note reads as follows:

Subject to any payment changes resulting from changes in the [Prime Rate], Borrower will pay this loan in 34 regular payments of $2,075.96 each. Borrower's first payment is due June 28, 2009, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 28, 2012, and will be for all principal and all accrued interest not yet paid. . . . Lender reserves the right to apply payments to outstanding indebtedness and obligations in any order that Lender may determine in its sole discretion. . . .

---

[6] The note provides that interest is calculated on a year of 360 days.

[7] See *Bowers v. Today's Bank*, 347 Ga. App. 615 (820 SE2d 459) (2018).

6

The note also provides for late fees: "LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000 [percent] of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater, regardless of any partial payments the Lender has received." The defendants focus on the phrase "regularly scheduled payment" and argue that this language only authorizes a late fee on the monthly payments, not the final payment due at the end of the term. But this overlooks the fact that the note is explicit that the late charge is triggered "[i]f *a payment* is 10 days or more late,"[8] not if a monthly payment is late. The language makes it clear that the late fee is applied only to the missed payment, not any previously scheduled payments or remaining overdue amounts. The note unambiguously requires JCW to pay the remaining balance on June 28, 2009, so a missed payment at that date would fall within the scope of the late fee provision, and the trial court did not err by so concluding.

(d) *Statutory attorney fee award*. OCGA § 13-1-11 (a) provides generally that "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt. . . ." The note in this case provided that such

---

[8] (Emphasis supplied.)

attorney fees could be collected at the rate of 15 percent of the principal plus interest. This amount is within the range authorized by OCGA § 13-1-11 (a) (1), and the defendants do not assert a lack of notice that the Bank would enforce the provision.[9] Although the defendants now argue that the fee award was subject to a reasonableness standard, they failed to make such a challenge prior to the judgment as required by OCGA § 13-1-11 (b) (1).[10] Accordingly, this argument fails.[11]

3. Black contends that the trial court erred by denying him relief based on an alleged breach of his privacy caused by the Bank's disclosure of his social security number when it filed its complaint with an unredacted copy of Black's guaranty attached.[12] This filing was later redacted, and the appellate record reflects the

---

[9] See OCGA § 13-1-11 (a) (3) (requiring notice before enforcement).

[10] That subsection provides that "the party required to pay such fees may, prior to the entry of judgment, petition the court seeking a determination as to the reasonableness of such attorney's fees."

[11] Cf. *Frame v. Booth*, 238 Ga. App. 428, 432 (3) (519 SE2d 237) (1999) ("The fee to be awarded therefore was only a matter of mathematical calculation, and the trial court did not err in granting summary judgment on the issue of attorney fees.") (decided prior to the reasonableness remedy in OCGA § 13-1-11 (b)). See Ga. L. 2012, p. 725, § 1.

[12] Black's answer did not separately enumerate a counterclaim for such relief, but it did allege such a breach and seek resulting damages.

redaction. Black does not identify any damages other than to speculate that someone may have viewed his social security number before it was redacted. As this Court held in *Cumberland Contractors, Inc. v. State Bank & Trust Co.*,[13] the disclosure under the circumstances of this case do not state a claim for relief for invasion of privacy.[14] Accordingly, this enumeration is without merit.

4. Finally, the defendants argue that the trial court erred by granting summary judgment without requiring the Bank to foreclose on its security interest or execute a quitclaim deed to the defendants. This argument ignores the fact that this is an action on a note, and there is no evidence of a security interest in the record. Further, in Georgia,

> [a] creditor who holds a promissory note secured by a deed is not put to an election of remedies as to whether he shall sue upon the note or exercise a power of sale contained in the deed, but he may do either, or pursue both remedies concurrently until the debt is satisfied. In other words, the holder of a note who is also the grantee in a deed to secure

---

[13] 327 Ga. App. 121 (755 SE2d 511) (2014).

[14] See id. at 126 (2) (a).

9

the indebtedness of the note is not forced to exercise the power of sale in the deed. He may sue on the note or exercise the power of sale.[15]

Therefore, the defendants' argument presents no basis for reversal.

*Judgment affirmed in part, vacated in part, and case remanded with direction.*

*Coomer and Markle, JJ., concur.*

---

[15] (Citations and punctuation omitted.) *REL Developmen, Inc. v. Branch Banking & Trust Co.*, 305 Ga. App. 429, 431 (1) (699 SE2d 779) (2010). See also *Tampa Investment Group, Inc. v. Branch Banking & Trust Co.*, 290 Ga. 724, 726-727 (1) (723 SE2d 674) (2012) (discussing a creditor's options when holding a note secured by real property).